IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 29, 2025

## STATE OF TENNESSEE v. MICHAEL RICHARD PENLEY

**Appeal from the Criminal Court for Hamilton County**
**Nos. 313561, 313594          Amanda B. Dunn, Judge**

_____

### No. E2024-00793-CCA-R3-CD

_____

The Defendant, Michael Richard Penley, appeals from the Hamilton County Criminal Court's probation revocation of the effective six-year sentence he received for his guilty-pleaded convictions for misdemeanor theft, two counts of evading arrest, reckless endangerment, driving while in possession of methamphetamine, attempted possession with the intent to sell methamphetamine, and reckless aggravated assault. On appeal, the Defendant contends that the trial court abused its discretion by revoking his probation and ordering him to serve the remainder of his sentence in confinement. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which TOM GREENHOLTZ and KYLE A. HIXSON, JJ., joined.

Steve Smith, District Public Defender; and Jonathan S. Wilson, Assistant District Public Defender, for the appellant, Michael Richard Penley.

Jonathan Skrmetti, Attorney General and Reporter; Ryan Dugan, Assistant Attorney General; Coty Wamp, District Attorney General; and Andrew Basler, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

On May 18, 2022, the Defendant was indicted in case number 313561 for misdemeanor theft, felony evading arrest, reckless driving, and driving while his license was suspended. On May 25, 2022, the Defendant was indicted in case number 313594 for reckless endangerment, driving while in possession of methamphetamine, driving while his license was suspended, possession with the intent to sell methamphetamine, unlawful removal of a license plate, evading arrest, and two counts of reckless aggravated assault.

On July 1, 2022, the Defendant failed to appear in court, and on August 26, 2022, the Defendant was arrested and held without bond. On October 21, 2022, the Defendant entered guilty pleas resolving both cases. In case number 313561, the Defendant pleaded guilty to misdemeanor theft and evading arrest, and the remaining charges were dismissed. In case number 313594, the Defendant pleaded guilty to reckless endangerment, driving while in possession of methamphetamine, attempted possession with the intent to sell methamphetamine, evading arrest, and reckless aggravated assault, and the remaining charges were dismissed. The Defendant received an effective six-year sentence to be served on probation, and he was required to complete the drug recovery court program as a condition of probation. The record contains a probation order, which reflects the Defendant's signature, stating the conditions of probation. The record, likewise, contains an order establishing the conditions of participation in the drug recovery court program and the drug recovery court contract, which reflects the Defendant's signature. The guilty plea hearing transcript is not included in the record. *See* T.R.A.P. 24(b); *see also State v. Bunch*, 646 S.W.2d 158, 160 (Tenn. 1983) (The Defendant has the burden of preparing a fair, accurate, and complete account of what transpired in the trial court relative to the issues raised on appeal, which includes the obligation to have a transcript of the evidence or proceedings prepared); *State v. Stack*, 682 S.W.3d 866, 876 (Tenn. Crim. App. 2023).

On December 15, 2022, a probation violation capias order issued based upon the allegations that the Defendant violated the terms and conditions of the drug recovery court program by failing to report for treatment and for drug screens and by failing to contact his case manager. The capias order reflects that the Defendant was alleged to have absconded from supervision. A January 25, 2023 probation violation report alleged that on December 12, 2022, the Defendant failed to report for inpatient treatment. On January 30, 2023, the trial court entered an order removing the Defendant from the drug recovery court program after determining that the Defendant had absconded from supervision for more than thirty days, failed to report for treatment, failed to report for drug screens, and failed to contact his case manager. The court determined that the Defendant's absconding from supervision was willful and "represent[ed] his voluntary withdrawal from the program."

On May 8, 2023, a second probation violation capias order issued. The corresponding probation violation report alleged that, in addition to the allegations contained in the January 25, 2023 probation violation report, on May 5, 2023, the Defendant was arrested for criminal impersonation, possession of a controlled substance, theft, and driving while his license was suspended. The report, likewise, alleged that the Defendant's January 30, 2023 removal from the drug recovery court program violated the conditions of his probation.

On May 12, 2023, the Defendant appeared for an arraignment in connection with the probation violation allegations. On December 14, 2023, the trial court partially revoked the Defendant's probation. The order reflects that the Defendant had been in custody since June 2, 2023. The court ordered the Defendant to remain in confinement until January 3, 2024, at which time the Defendant was to be released to a representative from "Rock House Ministries" (the ministry). However, an amended probation revocation order reflects that the court ordered the Defendant to be released on January 11, 2024, at 9:00 a.m., to a ministry representative. A transcript of this probation revocation proceeding is not contained in the appellate record. *See* T.R.A.P. 24(b); *see also Bunch*, 646 S.W.2d at 160.

A January 31, 2024 probation violation report alleged that the director of the ministry discharged the Defendant from the program on January 25, 2024, because the Defendant left the program after completing the "blackout period." The report alleged that the probation officer spoke to the Defendant by telephone on January 29, 2024, that the Defendant was ordered to report to the probation office and to submit to a drug screen on January 30, 2024, and that the Defendant stated he would fail the drug screen, would have a new address for his probation officer on January 30, 2024, and was ready to start a new recovery program. The report reflects that the Defendant did not report to the probation office on January 30, 2024, and that the Defendant's whereabouts were unknown. An addendum to the probation violation report alleged that on February 12, 2024, the Defendant had been arrested for possession with the intent to sell or to deliver methamphetamine.

At the May 8, 2024 probation revocation hearing, probation officer Jim Godfrey testified that he began supervising the Defendant in August 2023, at which time the Defendant was dismissed from the drug recovery court program. Mr. Godfrey said that after the December 2023 probation revocation, the Defendant was ordered to obtain treatment at the ministry. Mr. Godfrey said that on January 25, 2024, he received an email from Reverend Michael Christensen, the director of the treatment program at the ministry, stating that the Defendant was "no longer there" and had been released from the treatment program. Mr. Godfrey said he began investigating whether the Defendant had absconded from supervision.

Mr. Godfrey testified that after the Defendant left the ministry, he initiated contact with the Defendant because he was investigating whether the Defendant had absconded. Mr. Godfrey said that he went to the Defendant's home and that he spoke with the Defendant's "ex named Cindy," who provided him with the Defendant's cell phone number. Mr. Godfrey said that he "called the number and right away I got a text back who is this." Mr. Godfrey said that he identified himself and that the Defendant called him. Mr. Godfrey said that he reminded the Defendant about the court order requiring him to attend treatment at the ministry and that the Defendant laughed and said the ministry was

not beneficial to his sobriety and was not a good environment. Mr. Godfrey said that he told the Defendant to report to the probation office the next day, which was January 30, 2024. Mr. Godfrey said the Defendant failed to report and did not respond to his subsequent telephone calls and text messages.

Mr. Godfrey testified that on January 31, 2024, he submitted a probation violation report to the trial court and that later that day, he received a text message from the Defendant stating, "I'm sorry I didn't make it in, I didn't have a ride, I will be" at the probation office at 1:00 p.m. Mr. Godfrey said, though, that the text message was his last communication with the Defendant.

Mr. Godfrey testified that on February 12, 2024, he learned the Defendant had been arrested for new criminal offenses. Mr. Godfrey identified a certified judgment from the general sessions court, which was received as an exhibit. The judgment reflects that on February 12, 2024, the Defendant was arrested for misdemeanor methamphetamine possession and that on March 20, 2024, he pleaded guilty as charged and received a sentence of eleven months, twenty-nine days in confinement.

On cross-examination, Mr. Godfrey testified that during the January 29, 2024 telephone conversation, the Defendant stated that he would attempt to "pursue a new program" and that he would attempt to obtain "residency with either Oxford House or Friends House Ministries." Mr. Godfrey said that the Defendant stated he would have the "issue" resolved before reporting to the probation office on January 30, 2024.

A document from the Council for Alcohol and Drug Abuse Services (CADAS) was received as an exhibit and reflects that the Defendant was evaluated by telephone on May 1, 2024, and that the evaluator recommended an inpatient rehabilitation treatment program.

The thirty-eight-year-old Defendant testified that he left the ministry because "it was a weird environment." He said that participants in the program drank hand sanitizer and were violent toward each other. He recalled that one person chased someone with a broomstick or mopstick in the kitchen area. The Defendant said the administrators of the program did not enforce any rules. He acknowledged that he needed drug treatment but said that he needed treatment in "a better environment."

The Defendant testified that he did not contact his probation officer or the trial court about his concerns before leaving the ministry. He said that "Derrick," a ministry staff member, told the participants not to knock on his door "unless it was . . . house meeting time." The Defendant said that during house meetings, "they would just go around the room and let you say something but they wouldn't let you talk long." He said that, at times, he felt "a little intimidation there or something."

- 4 -

The Defendant testified that he called someone to pick him up from the ministry and that he left the facility. He said that he did not ask the person to drive him to another rehabilitation facility. He said that although he had wanted to go to Oxford House, he began using drugs the day after he left the ministry. He acknowledged that he had already used drugs when he first spoke to Mr. Godfrey and that he pleaded guilty to misdemeanor methamphetamine possession after he left the ministry. He acknowledged that he had a serious substance use problem but stated that he needed treatment from a structured rehabilitation program. He said that at the ministry, he was not "getting in touch with my drug use," that there were not any meetings about sobriety, and that the focus was "Bible study in the morning."

The Defendant testified that he needed inpatient treatment focusing on substance use, which had not been an option in the drug recovery court program and at the ministry. He admitted that he began using marijuana as a teenager, that he began using fentanyl and methamphetamine in his mid-twenties, and that he had periods of sobriety during the previous thirteen to fifteen years.

Addressing the trial court, the Defendant acknowledged that he had been provided with previous opportunities to comply with the conditions of his release but requested one more opportunity to obtain substance use treatment. He admitted that he was a drug addict and said that he would be honest and that he needed "some kind of help one more time." He said that CADAS would provide the treatment and structure he required and that he had previously completed a treatment program at CADAS. He said that he should have notified someone before leaving the ministry and that he acted without thinking because of his addiction. He apologized for his conduct.

On cross-examination, the Defendant testified that after he left the ministry, he failed to contact anyone about his departure and that he failed to report to the probation office after Mr. Godfrey told him to report. He thought he had served between twelve and eighteen months in confinement in connection with this case.

The trial court found that the Defendant violated the conditions of his probation by committing new criminal offenses. The court found that on February 12, 2024, the Defendant was arrested for misdemeanor methamphetamine possession, that he pleaded guilty to the charge on March 24, 2024, and that he was sentenced to confinement. The court, likewise, determined that the Defendant violated the conditions of his probation by absconding from supervision. The court stated that the basis for determining the Defendant absconded from supervision was "not even necessarily" the Defendant's leaving the ministry but rather, the Defendant's failure to report to Mr. Godfrey. The court noted that the probation office might have provided the Defendant with the opportunity for further treatment if he had reported as required. The court found that the Defendant failed to report

on January 30, 2024, that he discontinued his communication with Mr. Godfrey, and that, as a result, the Defendant absconded from supervision. The court further determined that the Defendant violated the conditions of his probation by failing to complete the ministry program.

In considering the appropriate consequence, the trial judge acknowledged that she supervised the drug recovery court program and that the prosecutor and defense counsel worked with the program regularly. The judge stated that she and the attorneys understood the nature of substance use disorder, its impacts on the brain and decision making, and the lengthy process to achieve lasting recovery. The trial court found that the Defendant suffered from substance use disorder, that he had been addicted to methamphetamine for half of his life, and that he needed additional treatment. The court, though, expressed uncertainty that the Defendant would comply with any treatment program. The court noted the Defendant's testimony that he needed treatment from a more structured program and determined that the drug recovery court program provided the most structure available to the Defendant. The court noted that in the drug recovery court program, the Defendant underwent drug screens and was assigned a case manager, an individual counselor, and a probation officer. The court found that the resources and structure provided by the drug recovery court program to the Defendant were substantial. The court found that in the program, the drug recovery court was held weekly and that the Defendant had intensive outpatient treatment four days per week. The court determined that within the drug recovery court program, the Defendant was subjected to the structure and supervision he now requested.

The trial court found that at the previous probation violation hearing in August 2023, "we had all these same conversations." The court noted its decision at that time to "execute" the two-year sentence but to hold the remainder of the sentence in abeyance in order for the Defendant to obtain treatment. The court found that the Defendant's substance use disorder prevented the Defendant from thinking rationally when he decided to leave the ministry and that his "rational mind" could not overcome the realities of triggering events, recovery, and drug cravings. The court found that, based upon the Defendant's history in this case, he would not comply with the terms of any treatment program, regardless of the amount of structure and supervision. As a result, the court revoked the Defendant's probation and ordered him to serve the remainder of his sentence in confinement. This appeal followed.

The Defendant contends that the trial court abused its discretion by revoking his probation and ordering him to serve the remainder of his sentence in confinement. He argues that the court failed to consider whether ordering him to serve his sentence would serve "the ends of justice" and was in his best interests and the interests of the public. He does not dispute that he violated the conditions of his probation but argues the court should

have allowed him to obtain substance use treatment. The State responds that the court did not abuse its discretion by ordering the Defendant to serve the remainder of his sentence.

"On appeal from a trial court's decision revoking a defendant's probation, the standard of review is abuse of discretion with a presumption of reasonableness so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record." *State v. Dagnan*, 641 S.W.3d 751, 759 (Tenn. 2022). An abuse of discretion has been established when the "record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980); *see State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *Shaffer*, 45 S.W.3d at 555 (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)).

When a trial court determines that a defendant's probation must be revoked, the court must then decide upon an appropriate consequence. *Dagnan*, 641 S.W.3d at 757. A separate hearing is not required, but the court must address the issue on the record in order for its decision to be afforded the abuse of discretion with a presumption of reasonableness standard on appeal. *Id*. at 757-58.

After revoking a defendant's probation, the trial court may return a defendant to probation with modified conditions as necessary, extend the period of probation by no more than one year upon making additional findings, order a period of confinement, or order the defendant's sentence into execution as originally entered. T.C.A. §§ 40-35-308(a), (c) (Supp. 2022), -310 (Supp. 2022). When the court orders a sentence into execution, the court "may give credit against the original judgment by the amount of time the defendant has successfully served on probation and suspension of sentence prior to the violation or a portion of that amount of time." *Id*. § 40-35-310; *see id*. § 40-35-311(e)(2) (Supp. 2022). When determining whether to "award credit for time successfully spent on probation" before revocation, a court "may consider 'the number of revocations, the seriousness of the violation, the defendant's criminal history, and the defendant's character.'" *State v. Williams*, 673 S.W.3d 255, 260 (Tenn. Crim. App. 2023) (quoting *Dagnan*, 641 S.W.3d at 759 n.5). A court's determination whether "to award or deny credit for time served on probation" is reviewed for an abuse of discretion. *Williams*, 673 S.W.3d at 259. "In probation revocation hearings, the credibility of witnesses is for the determination of the trial judge." *Carver v. State*, 570 S.W.2d 872, 875 (Tenn. Crim. App. 1978) (citing *Bledsoe v. State*, 387 S.W.2d 811, 814 (Tenn. 1965)).

The record supports the trial court's determination to order the Defendant to serve the remainder of his probationary sentence in confinement. The trial court considered all of the circumstances surrounding the present case and whether the Defendant could complete any treatment program to address his substance use disorder. Before pleading guilty, the Defendant failed to appear in court, which resulted in his arrest. The Defendant pleaded guilty on October 21, 2023, and was afforded the opportunity to obtain treatment in the drug recovery court program. However, the Defendant was removed from the drug recovery program approximately three months later because the court determined that he willfully absconded from supervision for more than thirty days, failed to report for treatment, failed to report for drug screens, and failed to contact his case manager, and his probation was partially revoked on December 14, 2023. After being in confinement from June 2, 2023, to January 11, 2024, the Defendant was returned to probation and released to obtain substance use treatment at the ministry. However, the Defendant left the treatment program less than one month later. The Defendant did not contact the trial court or his probation officer to inform anyone of his departure, although he had been ordered by the court to complete the treatment program. Although the probation officer and the Defendant spoke by telephone on January 29, 2024, the Defendant failed to report to the probation office as instructed on January 30, 2024. Thereafter, the Defendant ceased communicating with his probation officer and absconded from supervision. The Defendant admitted to using drugs the day after he left the ministry, and on February 12, 2024, he was arrested for misdemeanor possession of methamphetamine. On March 20, 2024, he pleaded guilty as charged.

The Defendant's drug use spanned approximately half his life, and he failed to complete two treatment programs while serving his sentence on probation. This was the second probation revocation proceeding in this case. The Defendant requested treatment at CADAS because of the structure and nature of the program. However, the Defendant testified that he had previously completed a treatment program at CADAS, but he continued to use drugs and to violate the law. The court noted the Defendant's failure to comply with the substantial structure of the drug recovery court program, which included drug screens, weekly court appearances, inpatient treatment four times per week, and the services of a counselor and a case manager. Although the court acknowledged the nature of substance use disorder, its impact on the brain and decision making, and the lengthy process to achieve lasting recovery, the court determined based upon the Defendant's history of his continued drug use and his failure to comply with the conditions of his probation, he would not comply with the terms of any treatment program. The court did not abuse its discretion by ordering the remainder of the Defendant's sentence into execution. He is not entitled to relief on this basis.

- 8 -

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

                                    **s/ Robert H. Montgomery, Jr.**
                                    ROBERT H. MONTGOMERY, JR., JUDGE